1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   STEPHEN DUFF,

11          Plaintiff,                         No. 2:11-cv-2357 EFB

12      vs.

13   CAROLYN W. COLVIN,[1]
     Commissioner of Social Security,

14
               Defendant.                      ORDER
15   _____/

16          Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

17   ("Commissioner") denying his application for Supplemental Security Income ("SSI") under Title

18   XVI of the Social Security Act.  The parties' cross-motions for summary judgment are pending.

19   For the reasons discussed below, the court grants the Commissioner's motion and denies

20   plaintiff's motion.

21   ////

22   ////

23   ////

24   _____

25          [1]  Michael J. Astrue was previously named as defendant.  Carolyn W. Colvin is presently
     the acting Commissioner of Social Security.  Accordingly, the court now substitutes in Carolyn
26   W. Colvin as defendant.  *See* Fed. R. Civ. P. 25(d).

I.      BACKGROUND

Plaintiff applied for SSI benefits on August 19, 2008, alleging that he had been disabled since January 1, 2001.  Administrative Record ("AR") 102-109.  Plaintiff's application was initially denied on September 18, 2008, and upon reconsideration on November 19, 2008.  *Id*. at 60, 70.  On October 7, 2009, a hearing was held before administrative law judge ("ALJ") Stanley R. Hogg.  *Id.* at 29-51.  Plaintiff was represented by counsel at the hearing, at which he and a third party testified.  *Id.*

On December 4, 2009, the ALJ issued a decision finding that plaintiff was not disabled under section 1614(a)(3)(A) of the act.[2]  *Id.* at 16-25.  The ALJ made the following specific

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*.  Supplemental Security Income ("SSI") is paid to disabled persons with low income.  42 U.S.C. §§ 1382 *et seq*.  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  *Bowen*, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  *Id*.

findings:

1.  The claimant has not engaged in substantial gainful activity since August 19, 2008, the supplemental security income application date (20 CFR 416.971 *et seq.*).

2.  The claimant has the following severe impairments: degenerative disc disease of the lumbar spine and carpal tunnel syndrome of the right hand (20 CFR 416.920(c)).

...

3.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

...

4.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of light work as defined in 20 CFR 416.967(b).  He is able to push, pull, lift, and carry 20 pounds occasionally and 10 pounds frequently.  He is not limited in sitting.  He can walk and stand for 6 hours per day.  He does not require an assistive device for ambulation.  He can perform postural activities, i.e. kneeling, crawling, and crouching frequently.  He can occasionally bend.  Agility, i.e. walking on uneven terrain, climbing ladders, or working at heights can be done on an occasional basis.  He is not restricted in using his left upper extremity for fine or gross manipulative movements.  He can use his right upper extremity for gross manipulation without restriction.  He can use his right upper extremity for fine manipulation on an occasional basis given his carpal tunnel syndrome.

...

5.  The claimant has no past relevant work, as he has not performed substantial gainful activity in the past 15 years.  (20 CFR 416.965).

...

6.  The claimant was born [in] 1960 and was 48 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7.  The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8.  Transferability of job skills is not an issue because claimant does not have past relevant work (20 CFR 416.968).

9.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

1   ...

2      10.  The claimant has not been under a disability, as defined in the Social Security

3   Act, since August 19, 2008, the date the application was filed (20 CFR
416.920(g)).

4   *Id.* at 18-24.

5      Plaintiff's request for review by the Appeals Council was denied on May 13, 2011,

6   leaving the ALJ's decision as the final decision of the Commissioner of Social Security.  *Id*. at 5-

7   8.

8   II.  <u>LEGAL STANDARDS</u>

9      The Commissioner's decision that a claimant is not disabled will be upheld if the findings

10   of fact are supported by substantial evidence in the record and the proper legal standards were

11   applied.  *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000);

12   *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*,

13   180 F.3d 1094, 1097 (9th Cir. 1999).

14      The findings of the Commissioner as to any fact, if supported by substantial evidence, are

15   conclusive.  *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is

16   more than a mere scintilla, but less than a preponderance.  *Saelee v. Chater*, 94 F.3d 520, 521

17   (9th Cir. 1996).  "'It means such evidence as a reasonable mind might accept as adequate to

18   support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol.*

19   *Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

20      "The ALJ is responsible for determining credibility, resolving conflicts in medical

21   testimony, and resolving ambiguities."  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.

22   2001) (citations omitted).  "Where the evidence is susceptible to more than one rational

23   interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

24   *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

25   ////

26   ////

4

III.  ANALYSIS

Plaintiff argues that the ALJ erred in (1) failing to properly credit the opinion of plaintiff's treating physician, (2) failing to properly credit plaintiff's testimony and third party statements regarding plaintiff's functional limitations, and (3) utilizing the Medical-Vocational Guidelines ("Grids").

A.   The ALJ Provided Specific and Legitimate Reasons for Rejecting the Treating Physician's Opinion

Plaintiff argues that the ALJ erred by failing to properly credit the opinion of his treating physician.  Pl.'s Mot. for Summ. J., Dckt. No. 18 at 7-11.  The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual.  *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons.  *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons that are supported by substantial evidence.  *Id.* at 830.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict.  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  However, "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'"  *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

1    Dr. Glenn Millar, plaintiff's treating physician, first saw plaintiff in August 2008, and

2 completed a Residual Functional Capacity Questionnaire on June 1, 2009. AR  151.  Dr. Millar

3 diagnosed plaintiff with "back pain" associated with symptoms of tenderness, sensory changes,

4 and limited range of motion.  *Id*. at 152.  It was Dr. Millar's opinion that plaintiff could walk one

5 city block without rest or severe pain, sit at one time for two hours, stand for 15 minutes, and

6 sit/stand/walk in an 8-hour working day a total of less than two hours.  *Id.*  Dr. Millar further

7 opined that plaintiff would not need a job that permits shifting-at-will from sitting, standing, or

8 walking; did not require unscheduled breaks during an 8-hour working day; and did not need to

9 use a cane or other assistive device.  *Id.* at 155.  He also opined that plaintiff could occasionally

10 lift and carry ten pounds, but was unable to lift more than 10 pounds without pain; and could

11 rarely twist, stoop, and crouch; could occasionally climb stairs, but never climb ladders.  *Id.*

12    The record also contains the opinion of Dr. John Simmonds, a consulting examining

13 physician, who examined plaintiff on September 5, 2008.  Dr. Simmonds diagnosed plaintiff

14 with discogenic disease involving his lumbosacral spine and carpal tunnel syndrom in the right

15 wrist.  *Id*. at 187.  Dr. Simmons found that plaintiff had normal posture and a normal gait pattern

16 with no limp.  *Id*. at 186.  He observed that plaintiff did not appear to be in chronic or acute

17 distress during the physical office examination–plaintiff was able to move about the office freely

18 but slowly, without any assistance, and was able to get on and off the examination table without

19 assistance or difficulty.  *Id.*  Dr. Simmonds also found that a straight leg raising test was

20 negative, there was no muscle spasm in plaintiff's cervical and thoracolumbar spine, plaintiff had

21 a full range of motion in his right hand, although positive signs for carpal tunnel were present.

22 *Id.* at 186-87.  Dr. Simmonds opined that plaintiff was able to push, lift, and carry twenty pounds

23 occasionally, fifteen pounds frequently; stand and/or walk for six hours; frequently kneel, crawl,

24 and crouch; bend on a regular basis; occasionally walk on uneven terrain, climb ladders, and

25 work at heights; and sit without restrictions.  *Id.* at 187-188.  Dr. Simmonds further opined that

26 ////

1   fine manipulation could be done only on an occasional basis for the right upper extremity;

2   otherwise plaintiff had no restrictions with respect to manipulative movements. *Id.* at 188.

3          Also included in the record is the opinion of Dr. Naiman, a non-examining state agency

4   consultant. *Id.* at 189-194. Dr. Naiman opined that plaintiff could lift and/or carry twenty

5   pounds occasionally and ten pounds frequently; stand and/or walk for 6 hours in an 8-hour day;

6   sit for 6 hours in an 8 hour day; and frequently climb,[3] balance, kneel, crouch and crawl, but

7   never stoop. *Id.* at 190-191. Dr. Naiman also opined that plaintiff was "limited in upper

8   extremities" when pushing and pulling; unlimited in reaching and feeling (skin receptors), but

9   had limited handling and fingering. *Id.* at 191.

10          In assessing the record, the ALJ gave "substantial evidentiary weight to" Dr. Simmonds'

11   opinion, as supported by the objective medical evidence, while giving "minimal evidentiary

12   weight" to Dr. Millar's opinion. *Id.* at 21. Thus, the ALJ rejected the treating physican's

13   opinion. *Id.* Plaintiff argues that this constituted error because the ALJ failed to credit the

14   opinion of Dr. Millar without providing legally sufficient reasons. Dckt. No. 18 at 2, 6-10.

15   Because Dr. Millar's medical opinion was contradicted by the opinions of Drs. Simmonds and

16   Naiman, the ALJ was required to give "specific and legitimate" reasons for rejecting Dr. Millar's

17   opinion. *See Orn,* 465 F.3d at 632. The ALJ has done so here.

18          The ALJ's first reason for according minimal weight to Dr. Millar's opinion was the

19   limited relationship between the plaintiff and Dr. Millar. The ALJ observed that Dr. Millar had

20   only been treating the claimant for one year at the time he provided his medical assessment. AR

21   21. The record only shows that Dr. Millar treated plaintiff on three occasions prior to preparing

22   his assessment, i.e. October 10, 2008, May 12, 2009 and June 1, 2009. *Id.* at 223, 221, 220. As

23   discussed above, an opinion from a treating source is generally afforded greater weight because a

24   treating physician has a better opportunity to know and observe the patient. *Smolen,* 80 F.3d at

25

26         [3] i.e. ramps, stairs, ladders, ropes, and scaffolds.

1   1985.  However, in deciding what weight to give a treating-source opinion, an ALJ may consider

2   the length of the treatment relationship and the frequency of examination.  20 C.F.R.

3   § 404.1527(c)(2)(I); *see also Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001).  Given

4   that Dr. Millar had only seen plaintiff on three occasions in the year prior to providing his

5   opinion, the ALJ permissibly considered the duration of the relationship in according less weight

6   to Dr. Millar's contradicted medical opinion.

7        The ALJ also rejected Dr. Millar's opinion because it was primarily based on plaintiff's

8   subjective complaints, which, as explained below, the ALJ properly discredited.  *Id*. at 21.  The

9   opinion of a treating physician may be rejected where it is premised primarily on plaintiff's

10  subjective complaints and the ALJ properly discounted plaintiff's credibility.  *Tonapetyan v.*

11  *Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

12       Plaintiff argues that Dr. Millar's opinion was "no doubt based on clinical observation and

13  assessment, physical examinations, testing, radiological evidence, medical history, as well as

14  [plaintiff's] subjective complaints."  Dckt. No. 18 at 9.  A review of the record, however, reveals

15  otherwise.  AR  153.  Dr. Millar's progress note, dated June 1, 2009, suggests he relied upon

16  plaintiff's subjective complaints–"[plaintiff] says he has daily constant back pain and it is a 10

17  on the VAS.  The pain is affected by walking, bending, lifting, twisting, or even sitting.  He

18  describes his condition diagnosed elsewhere, degenerative disk disease and sciatic nerve

19  damage."  *Id.* at  220.  Furthermore, Dr. Millar only identified minimal clinical findings to

20  support his opinion.  Dr. Millar found that plaintiff had "tenderness" and "sensory changes," and

21  a decreased cervical range of motion.  *Id.* at 152-3.  Given the minimal clinical findings, the

22  court finds that the record supports the ALJ's conclusion that Dr. Millar relied primarily on

23  plaintiff's subjective complaints in reaching his opinion.

24       Relying on *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194 (9th Cir. 2008), plaintiff

25  argues that the ALJ's finding that Dr. Millar's opinion was based on plaintiff's subject

26  complaints is not a sufficient basis for discrediting Dr. Millar's opinion because Dr. Millar did

8

1   not question plaintiff's credibility and he supported his opinion with his own clinical findings.

2   Dckt. No. 18 at 9.   In *Ryan*, the Ninth Circuit held that "an ALJ does not provide clear and

3   convincing reasons for rejecting an examining physician's opinion by questioning the credibility

4   of the [claimant's] complaints where the [examining physican] does not discredit those

5   complaints and supports his ultimate opinion with his own observations."   However, the Ninth

6   Circuit found that there was "nothing in the record to suggest" the examining physician in that

7   case relied on the claimant's "description of her symptoms  . . . more heavily than his own

8   clinical observations."   *Id*. at 1200.   That is not the case here.

9        The record shows that Dr. Millar relied more heavily on plaintiff's subjective complaints.

10  As previously discussed, Dr. Millar only identified minimal clinical findings to support his

11  opinion that plaintiff had severe functional limitations.   However, Dr. Millar's functional

12  assessment stated that petitioner experienced "daily pain - 10 on VAS."   AR 152.   On June 1,

13  2009, plaintiff informed Dr. Millar that he had extreme daily pain, which was assessed at a "10

14  on the VAS."   *Id.* at 220.   Plaintiff informed Dr. Millar that his pain was affected by walking,

15  bending, lifting, twisting and sitting–all limitations Dr. Millar found severely impaired.   *Id*.   This

16  evidence, coupled with the minimal clinical findings identified by Dr. Millar, supports the ALJ's

17  determination that Dr. Millar relied primarily on plaintiff's subjective complaints, and not on his

18  own clinical observations.   Accordingly, Dr. Millar's reliance on plaintiff's subjective

19  complaints was a legally sufficient basis for rejecting his medical opinion.[4]

20        Dr. Millar's opinion was also rejected based on the ALJ's finding that his medical report

21  was internally inconsistent.   Dr. Millar concluded that plaintiff could sit for two hours at a time,

22  but could only sit for two hours in an 8-hour day.   *Id.* at 154.   The ALJ found that "it is totally

23

24        [4] *Ryan* is also distinguishable from the instant case because *Ryan* specifically dealt with
    whether the ALJ provided clear and convincing reasons for rejecting an examining physician's
25  opinion.   528 F.3d 1200.   Here, Dr. Millar's opinions regarding plaintiff's functional limitations
    are contradicted, and, thus to reject his opinions the ALJ was only required to give specific and
26  legitimate reasons, not clear and convincing reasons.

1    inconsistent, absent explanation, to opine that an individual can sit for 2 hours at one time, yet

2    can only sit for 2 hours in an 8 hour work day." *Id.*  Plaintiff argues, however, that Dr. Millar's

3    opinion is not "internally inconsistent."  Dckt. No. 18 at 9.  Plaintiff contends that Dr. Millar's

4    assessment makes perfect sense in light of his opinion plaintiff can only work for a maximum of

5    two hours in an 8-hour day.  *Id.*  Contrary to plaintiff's averment, Dr. Millar did not specifically

6    opine that plaintiff was limited to working only two hours in an 8-hour day.  Rather, Dr. Millar

7    opined that plaintiff could only sit/stand/walk for less than two hours in 8-hour day, sit for about

8    two hours in an eight hour day, but that he has the ability to sit for two hours at one time.

9    The court agrees that Dr. Millar's opinion is internally inconsistent.  It does not logically follow

10   that an individual would possess the ability to sit for two hours straight, but then be unable to sit

11   again for the next six hours.  Furthermore, Dr. Millar's other opinions do not clarify the

12   inconsistency, as plaintiff contends, but rather shed further doubt on this opinion.  For instance,

13   Dr. Millar opines that plaintiff can stand for 15 minutes at one time and can sit for two hours at

14   one time, but that he can only sit/stand/walk for less than two hours in an 8-hour day.  The

15   internal inconsistencies in Dr. Millar's report support the ALJ's rejection of his medical opinion.

16   In any event, plaintiff contends the ALJ had a duty to recontact Dr. Millar for clarification if the

17   ALJ "was genuinely confused."  Dckt. No. 18 at 9.  Plaintiff relies on 20 C.F.R. section

18   416.912(e) to support his contention.  This regulation provides in pertinent part:

19           Recontacting medical sources.  When the evidence we receive from your treating
             physician or psychologist or other medical source is inadequate for us to
20           determine whether you are disabled, we will need additional information to reach
             a determination or a decision.  To obtain the information, we will take the
21           following actions.

22               (1) We will first recontact your treating physician or psychologist or other
                 medical source to determine whether the additional information we need is
23               readily available.  We will seek additional evidence or clarification from
                 your medical source when the report from your medical source contains a
24               conflict or ambiguity that must be resolved, the report does not contain all
                 the necessary information, or does not appear to be based on medically
25               acceptable clinical and laboratory diagnostic techniques.

26   ////

10

1    Plaintiff's argument is unpersuasive.  The requirement to seek additional information is

2  triggered only when the evidence from the treating medical source is inadequate to make a

3  determination as to the claimant's disability.  *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir.

4  2002).  Here, the ALJ did not find that the report was inadequate to make a determination

5  regarding plaintiff's disability.  Instead, the ALJ disagreed with Dr. Millar's opinion and

6  provided numerous reasons for why his opinion should be rejected.  Thus, the ALJ had no duty

7  to seek clarification from Dr. Millar.  *See id*.

8    Lastly, Dr. Simmonds' opinion constitutes substantial evidence to support the ALJ's

9  rejection of Dr. Millar's report.  *See Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989)

10  ("Where the opinion of the claimant's treating physician is contradicted, and the opinion of a

11  nontreating source is based on independent clinical findings that differ from those of the treating

12  physician, the opinion of the nontreating source may itself be substantial evidence; it is then

13  solely the province of the ALJ to resolve the conflict).  Dr. Simmonds' report provided detailed

14  analysis supporting his medical opinion.  His assessment was based upon a formal physical

15  examination, observations of plaintiff's movements in the examination room, including his

16  ability to get off and on the table, and a review of "all of the medical documentation" in the

17  chart.  AR 184-185.  Dr. Simmonds examined plaintiff's spine and found no evidence of

18  increased muscle tone or spasms.  *Id*. at 186.  He examined plaintiff's station and gait and found

19  that plaintiff did not appear to be in acute or chronic distress.  *Id*.  Plaintiff was able to get on and

20  off the table without difficultly and sat on the examination table in "apparent comfort"

21  throughout the interview process.  *Id*.  Dr. Simmonds also performed a straight leg test on

22  plaintiff, which was negative.  *Id*. at 187.  All of these findings differ from the scant clinical

23  findings relied upon by Dr. Millar in assessing plaintiff's functional limitations.  Accordingly,

24  Dr. Simmonds' report is further substantial evidence supporting the ALJ's rejection of Dr.

25  Millar's opinion.

26  ////

1    The ALJ provided specific and legitimate reasons for rejecting Dr. Millar's opinion.

2    Accordingly, the ALJ did not err in giving minimal weight to Dr. Millar's opinion.

3         B.    The ALJ Properly Rejected Portions of Plaintiff's Testimony and Third Party
                Statements

4

5         Plaintiff argues that the ALJ rejected his testimony and third party's testimony without

6    providing legally sufficient reasons. Dckt. No. 18 at 11-13. In evaluating whether subjective

7    complaints are credible, the ALJ should first consider objective medical evidence and then

8    consider other factors. *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there

9    is objective medical evidence of an impairment, the ALJ then may consider the nature of the

10   symptoms alleged, including aggravating factors, medication, treatment and functional

11   restrictions. *See id.* at 345-47.

12        The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior

13   inconsistent statements or other inconsistent testimony; (2) unexplained or inadequately

14   explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the

15   applicant's daily activities. *Smolen*, 80 F.3d at 1284. Work records, physician and third party

16   testimony about nature, severity, and effect of symptoms, and inconsistencies between testimony

17   and conduct also may be relevant. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

18   The ALJ may rely, in part, on his or her own observations, *see Quang Van Han v. Bowen*, 882

19   F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. *Marcia v.*

20   *Sullivan*, 900 F.2d 172, 177 n.6 (9th Cir. 1990). "Without affirmative evidence showing that the

21   claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must

22   be clear and convincing." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir.

23   1999).

24        In rejecting plaintiff's testimony, the ALJ found that plaintiff had a poor work history

25   and had multiple incarcerations. AR 22, 23. The ALJ is entitled to consider plaintiff's work

26   history in making a credibility determination. *See Thomas*, 278 F.3d at 959 (ALJ properly found

12

poor work history and lack of propensity to work in lifetime negatively affected claimant's credibility regarding her inability to work).  Plaintiff worked as an apprentice pressman in 1993/1994, and last worked as a prep cook in 2001/2002 at Round Table Pizza before he apparently was fired.  AR 33, 122, 185.  The record reveals that plaintiff has been unemployed for the majority of the past twenty years.  Although his multiple incarcerations may partially explain the lack of employment, this does not render the ALJ's finding that plaintiff had poor work history over the last 20 years unsupported.  Thus, the ALJ properly considered plaintiff's work history in concluding that plaintiff lacked motivation to return to the work world.  AR 23.

        The ALJ also found that plaintiff was inconsistent in describing his need to use a cane.  AR 23.  Plaintiff testified that he used a cane because it "helps him to balance and keeps the weight off of [his] bad side."  TR 32.  In September 2008, Dr. Simmonds stated that plaintiff "does not use a cane for an assistive ambulatory device."  AR 185.  However, a month later, when plaintiff appealed the initial decision denying him benefits, he stated he was "perscribed [*sic*] walking cane."  *Id.* at 146.  The record, however, does not reveal that plaintiff received such a prescription.  Indeed, Dr. Millar stated in June 2009 that he had been treating plaintiff since August 2008 and that plaintiff did not require an assistive device for occasional standing and walking.  *Id.* at 155.

        The ALJ also observed that plaintiff's testimony was inconsistent with his activities of daily living.  An ALJ may consider inconsistencies between a claimant's activities and his subjective complaints.  *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001); *Thomas*, 278 F.3d 947, 959 (9th Cir. 2002).  In the instant case, plaintiff testified that he could only walk three-quarters of a city street block before he experienced pain.  AR 38.  However, the third party witness testified that he often walked to the nearby library, which was a quarter mile away.  TR 50.  Thus, the ALJ correctly observed plaintiff's behavior was inconsistent with his testimony.

////

1    The ALJ's credibility findings with respect to plaintiff's testimony were thoroughly

2    explained and supported.  Although plaintiff may disagree with the specific findings, the

3    findings were supported by clear and convincing evidence in the record and the court will not

4    second-guess them.  *Thomas*, 278 F.3d at 959.  Therefore, plaintiff's challenge on this ground

5    fails.

6        Plaintiff further argues the ALJ erred when he discounted the third party testimony of

7    Kim Lawrence, the manager of a homeless shelter where plaintiff stays.  Dckt. No. 18 at 14.

8    Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into

9    account, unless he expressly determines to disregard such testimony and gives reasons germane

10   to each witness for doing so.  *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001).  An ALJ must

11   consider this testimony in determining whether a claimant can work.  *Stout v. Comm'r of Soc.*

12   *Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006); *see also* 20 C.F.R. § 416.913(d) (4); *Smolen*,

13   80 F.3d at 1288.  In order to discount the testimony of a lay witness, the ALJ must "give reasons

14   that are germane to each witness."  *Id.* at 1053; *see also Valentine v. Comm'r of Soc. Sec.*

15   *Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).

16       Here, the ALJ did not discredit Ms. Lawrence's testimony.  In fact, the ALJ accorded her

17   testimony "some evidentiary weight."  AR 23.  For example, Ms. Lawrence testified that

18   plaintiff does not move around the facility, he does not work at the facility, he does not engage in

19   physical activity, and that the facility sometimes makes an exception and allows him to stay (due

20   to pain) when others have been required to leave.  *Id.* at 48-49.  However, Ms. Lawrence

21   provided little testimony regarding plaintiff's functional limitations.  She testified that plaintiff

22   would walk 100 yards to the park and a quarter mile to the library, *id.* at 50, but the ALJ did not

23   reject this testimony.  Rather, the ALJ relied on this testimony to reject plaintiff's contention that

24   he could only walk three-quarters of a block.  *Id.* at 38.

25       While Ms. Lawrence stated that plaintiff always used a cane, she never expressed an

26   opinion about whether such use was necessary.  *Id.* at 48.  To the extent that her testimony could

14

1   be construed as a statement that she believed plaintiff required a cane for ambulation, the ALJ

2   provide a germane reason for rejecting such an opinion.  The ALJ specifically found that there

3   was other evidence in the record–i.e. the opinion of plaintiff's treating physican–that plaintiff did

4   not require a cane.  Accordingly, the ALJ did not err in assessing Ms. Lawrence's testimony.

5           C.       The ALJ Property Relied Upon the Grids

6           Plaintiff claims the ALJ erred when he utilized the Medical-Vocational Guidelines (the

7   "Grids") because the Grids cannot accurately describe plaintiff's nonexertional limitations.

8   Dckt. No. 18 at 2, 14-16.  The Grids are tables that present various combinations of factors the

9   ALJ must consider in determining whether other work is available.  *See generally Desrosiers v.*

10  *Sec'y of Health and Human Services*, 846 F.2d 573, 577–78 (9th Cir. 1988).  An ALJ may apply

11  the Grids instead of consulting a vocational expert "only when the grids accurately and

12  completely describe the claimant's abilities and limitations."  *Jones v. Heckler*, 760 F.2d 993,

13  998 (9th Cir. 1985); *see also Heckler v. Campbell*, 461 U.S. 458, 462 n. 5 (1983).  If a claimant

14  has nonexertional limitations—that is, limitations on his or her ability to work that do not

15  directly affect his or her strength—the ALJ may only rely on the Grids if the nonexertional

16  limitations are not so significant as to impact the claimant's exertional capabilities.  *See Penny v.*

17  *Sullivan*, 2 F.3d 953, 958 (9th Cir. 1993).  Nonexertional limitations are non-strength related

18  limitations including mental, sensory, postural, manipulative, and environmental limitations.  20

19  C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e).  The Ninth Circuit also has held that pain can be a

20  non-exertional limitation.  *Tackett*, 180 F.3d at 1102.  While it is true that significant

21  non-exertional impairments may make reliance on the Grids inappropriate, "the fact that a

22  non-exertional limitation is alleged does not automatically preclude application of the Grids.

23  The ALJ should first determine if a claimant's non-exertional limitations significantly limit the

24  range of work permitted by his exertional limitations."  *Id.* at 1101–02.

25          Plaintiff argues that the ALJ was required to rely upon a VE because the evidence

26  documented numerous nonexertional limitations and symptoms, including pain, inability to

15

1    manipulate the right hand, limitations in sitting/standing/walking, and impaired attention and

2    concentration.  Dckt. No. 18 at 16.  This argument is primarily based on plaintiff's contention

3    that the ALJ failed to account for the limitations identified by Dr. Millar.  As explained above,

4    the ALJ did not err in rejecting this evidence.

5           Plaintiff also argues that the use of the Grids was inappropriate based on the ALJ's

6    finding that plaintiff could only occasionally perform fine manipulation with his right hand.

7    Dckt. No. 15 at 16.  Social Security Ruling 85-15 provides that reaching, handling, holding,

8    grasping, and turning are activities required for almost all jobs.  With respect to fine

9    manipulative dexterity, most sedentary jobs require good use of the hands and fingers.  *See* 85-

10   15 at 7.  However, many unskilled light jobs do not entail fine use of the fingers, but rather

11   require gross manipulation of the upper extremities to grasp, hold, and turn objects.  *See* SSR

12   83-14 at 2, 4.

13          In determining that plaintiff could perform the full range of light work, the ALJ found

14   that plaintiff could use his upper right extremity for gross manipulation without restriction, but

15   that he could only use this extremity for fine manipulation on an occasional basis due to his

16   carpal tunnel syndrome.  AR 20.  He also found that plaintiff could use his upper left extremity

17   for fine and gross manipulation without restriction.  *Id*.  Given the fact that plaintiff is only

18   limited to using his right upper extremity for fine manipulation on an occasional basis, but

19   otherwise had no restrictions on gross manipulations, the court concludes that the ALJ did not err

20   in using the Grids as a framework to determine that plaintiff could perform light work.  The

21   impairment to plaintiff's right hand did not significantly limit the range of work permitted by his

22   exertional limitations.  *See* Tackett, 180 F.3d at 1101-02; *Rangel v. Astrue*, 2008 WL 215190,

23   *6-7 (E.D. Cal. Jan. 24, 2008).

24   ////

25   ////

26   ////

IV.  CONCLUSION

       The court finds that the ALJ's decision is supported by substantial evidence and is based on the proper legal standards.  Therefore, IT IS ORDERED that:

       1.  Plaintiff's motion for summary judgment is denied;

       2.  The Commissioner's cross-motion for summary judgment is granted; and

       3.  The Clerk is directed to enter judgment in the Commissioner's favor.

DATED:  March 27, 2013.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE